UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

958 AVENUE OF THE AMERICAS, LLC,

                      Plaintiff,

            -v-

ABASIC, S.A., NTS W. USA CORP., D/B/A DESIGUAL,

                      Defendants.

21-CV-10348 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff 958 Avenue of the Americas, LLC ("958") brings this action against Defendants ABASIC, S.A., f/k/a ABASIC, S.L. ("ABASIC"), and NTS W. USA, Corp. d/b/a Desigual ("NTS", and together with ABASIC, "Defendants") for breach of contract. Presently before the Court is 958's motion for summary judgment (ECF No. 35) and Defendants' motion for partial summary judgment (ECF No. 41).

## I. Background

### A. Factual Background

    The following facts are drawn from 958's Local Rule 56.1 Statement of Material Facts (ECF No. 40), Defendants' Local Rule 56.1 Statement of Material Facts (ECF No. 45), Defendants' Response to 958's Statement of Material Facts (ECF No. 54), and the underlying evidence cited therein. The facts recited here are undisputed unless otherwise noted, and they are construed in the light most favorable to the non-movant.

    958 is the lessee of real property located at 1330 Broadway a/k/a 76 West 35th Street a/k/a 958 Sixth Avenue, New York, New York 10001 (the "Building"). (ECF No. 45 ¶ 5.) The

1

owner of the Building is SCG Realty II LLC ("SCG").  (*Id.* ¶ 6.)  On July 24, 2009, 958 entered into an agreement (the "Overlease") with SCG to lease the Building.  (*Id.*; ECF No. 36-1.)

ABASIC is a company organized under the laws of Spain that manufactures and distributes apparel, footwear, and accessories under the brand "Desigual."  (ECF No. 45 ¶¶ 1-2.)  NTS is a Delaware corporation and wholly owned subsidiary of ABASIC which is ABASIC's retail and wholesale distributor in the United States.  (*Id.* ¶¶ 4-5.)  On November 20, 2009, NTS (through its predecessor entity) entered into an agreement (the "Sublease") to sublet the Building from 958 as a retail office space.  (*Id.* ¶ 7; ECF No. 36-2.)  In conjunction with the Sublease, ABASIC and 958 entered into a corporate guaranty agreement, whereby ABASIC guaranteed NTS's obligations to 958 under the Sublease.  (ECF No. 45 ¶ 8.)  The Sublease was expressly subject and subordinate to the Overlease.  (ECF No. 36-2 ¶ 16.03(a).)

From February 2010 through May 2019, 958 and NTS executed first, second, third, and fourth amendments to the Sublease, each of which, *inter alia*, extended the term of the Sublease and adjusted the annual fixed rent to be paid on a monthly basis.  (ECF No. 40 ¶¶ 16-19.)  Under the terms of the fourth amendment, the sublease was extended through September 30, 2025, and NTS's monthly fixed rent for the period spanning October 1, 2020 through September 30, 2021 was to be $61,921.20 per month with annual increases through September 30, 2025.  (ECF No. 40 ¶¶ 19-20; ECF No. 43-6.)

On July 23, 2020, NTS filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Southern District of New York, Case No. 20-35769 (CGM).  (ECF No. 45 ¶ 10.)  NTS originally rejected the Sublease.  (ECF No. 45 ¶ 11.)  However, on October 16, 2020, 958, NTS, and ABASIC agreed to a fifth amendment to the Sublease pursuant to which NTS agreed to assume the Sublease.  (*Id.*)  Under

the terms of the fifth amendment, the parties agreed to reduce the term of the Sublease by two years — from the original termination date of September 30, 2025, to September 30, 2023 — and reduced the fixed rent to $16,666.66 per month. (ECF No. 40 ¶ 25; ECF No. 36-7.) After entering into the fifth amendment to the Sublease, NTS continued to operate its retail business from the Building. (ECF No. 54 ¶ 29.)

958 also entered into negotiations with SCG to adjust its own rental obligations under the Overlease. (ECF No. 40 ¶ 21; ECF No. 36 ("Terzi Decl." ¶ 19.) On November 17, 2020, SCG filed an action in the Supreme Court of the State of New York, New York County, *SCG REALTY II LLC v. 958 Avenue of the Americas, NTS W. USA Corporation d/b/a Desigual,* Index No. 656343/2020 (the "Supreme Court Action"), in which SCG sought a monetary judgment and possessory judgment against 958 and NTS. (ECF No. 40 ¶ 35; ECF No. 50-1.) SCG commenced the Supreme Court Action after sending 958 a letter on August 14, 2020, which purported to be a notice of default under the Overlease. (ECF No. 43-9.)

On March 2, 2021, 958 filed an answer and counterclaims alleging that SCG had failed to terminate the Overlease as a matter of law prior to commencing the Supreme Court Action. (ECF No. 40 ¶ 36; ECF No. 38-2.) On March 5, 2021, SCG sent 958 a second letter that purported to be a notice of default, which stated that this second letter was as a "backup" to the August 14, 2020 notice. (ECF No. 40 ¶ 38; ECF No. 43-10.) Then, on March 24, 2021, SCG sent 958 a third letter, which purported to be a notice of termination of the lease. (ECF No. 40 ¶ 38; ECF No. 43-11.)

On April 20, 2021, as a result of SCG's March 24, 2021 letter, NTS took the position that the Overlease, and therefore, the Sublease, had been terminated, and sent an email to 958 advising that NTS intended to surrender the Building effective April 23, 2021. (ECF No. 45

¶ 18; ECF No. 43-13.) On April 22, 2021, 958's counsel responded to NTS's letter, taking the position that the notices were legally insufficient to terminate the Overlease, and that the Overlease and Sublease thus remained in effect. (ECF No. 40 ¶ 41; ECF No. 38-5.) On April 30, 2021, NTS sent another letter to 958 advising that NTS intended to surrender the Building effective April 30, 2021. (ECF No. 45 ¶ 18; ECF No. 43-14.) NTS delivered the keys to the Building to 958 on June 1, 2021. (ECF No. 45 ¶ 19.) On June 25, 2021, NTS sent 958 a written demand for indemnification, citing Section 9.01(b) of the Sublease. (ECF No. 45 ¶ 20; ECF No. 43-15.)

On July 28, 2021, SCG filed a "Stipulation of Discontinuance and Settlement As Between SCG Realty II, LLC and 958 Avenue of the Americas LLC" in the Supreme Court Action. (ECF No. 40 ¶ 49; ECF No. 43-8.) Under the stipulation, SCG admitted that its August 14, 2020, March 5, 2021, and March 24, 2020 notices were "insufficient as a matter of law and under the terms of the parties' Lease to serve as a predicate notice upon which [SCG] could rely upon as a basis to terminate 958's Lease." (ECF No. 40 ¶ 49; ECF No. 43-8 ¶¶ 2-4.)

### B.     Procedural History

On or about October 27, 2021, Plaintiff 958 commenced this action in the Supreme Court of the State of New York, County of New York. (ECF No. 1.) On December 3, 2021, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a). (*Id.*) On December 27, 2021, Defendants filed an answer with counterclaims. (ECF No. 19.) On January 14, 2022, 958 filed its reply to Defendants' counterclaims. (ECF No. 23.) On October 25, 2022, 958 moved for summary judgment (ECF No. 35) and Defendants moved for partial summary judgment (ECF No. 41). On November 29, 2022, 958 opposed Defendants' motion for partial summary judgment (ECF No. 51), and Defendants opposed 958's motion for summary judgment (ECF No. 53). On December 13, 2022, 958 filed a reply in support of its motion for summary

judgment (ECF No. 56) and Defendants filed a reply in support of their motion for partial summary judgment (ECF No. 57).

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## III.    Discussion

### A.     Plaintiff's Amendment to the Complaint

As an initial matter, 958 asks the Court to deem the complaint amended to permit recovery of the rent and additional rent arrears and legal fees that accrued since the complaint was filed.  "The decision of whether to allow such an amendment is left to the discretion of the district court judge." *Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 279 (2d Cir. 1996). Amendment is inappropriate when it would prejudice the other party. *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000).

Defendants have provided no argument that they would be prejudiced by this amendment.  Accordingly, the complaint is deemed amended to allege $1,102,676.31 in damages through October 31, 2022 for unpaid rent.

### B. Whether the Overlease and Sublease Were Terminated as a Matter of Law

Under New York law, when interpreting contracts, courts apply the "familiar and eminently sensible proposition of law . . . that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (citation omitted).  This rule has "special import in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length." *Id.* (internal quotation marks and citation omitted); *see also 159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 358-59 (2019).

958 initially argues that Defendants do not have standing to seek declaratory relief that the Overlease was terminated on March 24, 2021 because Defendants are not parties to the Overlease and the parties to the Overlease have stipulated that the Overlease was not terminated on March 24, 2021.  The Court disagrees.  Both NTS's and ABASIC's rights under the sublease flow from the Overlease between 958 and SCG. (ECF No. 36-2 ¶ 16.03(a).)  NTS's contention that the Overlease was terminated as a matter of law does not raise issues of standing.

Article 23.02 of the Overlease sets out the requisite procedures for SCG to provide 958 with notice of default in payment of rent and notice of termination of the lease.  In relevant part, Article 23.02 states:

> This Lease is subject to the further limitations that: (a) if Tenant shall default in the payment of any Rent, and such default shall continue for ten (10) days after notice . . . then . . . Landlord may give to Tenant a notice of intention to end the Term at the expiration of ten (10) days from the date of the service of such notice of intention, and upon the expiration of said ten (10) days, whether or not the Term shall theretofore have commenced, this Lease shall terminate with the same effect as if that day were the Expiration Date of this Lease.

6

(ECF 36-1 ¶ 23.02.)  Thus, pursuant to Article 23.02, in order to effectuate a valid termination of the lease for a default in payment in rent, SCG is required to first send a notice of default, and then, following a ten-day period, to send a notice of intention to terminate the lease that would take effect following another ten-day period.

SCG sent 958 a letter on August 14, 2020, titled "Notice of Default with Ten Day Notice to Cure." (ECF No. 43-9.)  The letter notified 958 that it was "in default of the [lease], for failure to pay rent and real estate taxes from April 1, 2020 to present in the amount of $320,839.80" and that "[p]ursuant to Article 23.02 of [the lease, 958 was] required within ten (10) days from receipt of this notice, to pay to [SCG] the delinquent Rent." (*Id.* at 2-3.)  The notice further stated that "[f]ailure to remit payment in full on or before August 27, 2020 will result in an immediate termination of [958's] Tenancy and [SCG] will commence eviction proceedings." (*Id.*)

On March 2, 2021, 958 filed its answer in the Supreme Court Action raising several defenses pertaining to the insufficiency of SCG's August 14, 2020 notice.  Three days later, on March 5, 2021, SCG sent 958 a second letter.  (ECF No. 37-4.)  This letter was titled "Notice of Default with Ten (Rent) and Fifteen Day (Taxes) Notice to Cure; Demand for Payment." (*Id.* at 2.)  The letter stated that it serves as "a backup to [SCG]'s default letter sent on August 14, 2021 [sic] in the event a court finds that notice deficient." (*Id.*)  The March 5, 2021 notice specifies that 958 was in default for failure to "pay rent and real estate taxes ('RET') from April 1, 2020 to the present in the amount of $733,414.38 through February 28, 2021 (together with an additional $ 68,988.81 if March Rent and RET is not paid to Landlord)." (*Id.* at 2-3.)  The letter further states that "[p]ursuant to Article 23.02 of [the lease, 958 was] required within ten (10) days from receipt of this notice, to pay to [SCG] the delinquent Rent and within 15 days Real Estate Taxes

combined of $733,414.38 through February 28, 2021 (together with an additional $68,988.81 if March Rent and RET is not paid to Landlord)" and that failure to do so would "result in the immediate termination of 958's Tenancy without further notice to [958] pursuant to Section 23 of the Lease and [SCG] will commence eviction proceedings and will seek a money judgment." (*Id.* at 3.)

Finally, on March 24, 2021, SCG sent a third letter to 958, titled "Notice of Termination of Lease (Second)." (*Id.* at 5.) This letter stated that 958 had "failed to cure the monetary breaches of the Lease as set forth in our March 5, 2021 letter" and that that the lease was "terminated in accordance with *inter alia*, Article 23." (*Id.*)

The Court concludes that none of these notices were sufficient as a matter of law to terminate the lease. First, SCG's single notice dated August 14, 2020, failed to comply with Article 23.02 of the Overlease, which requires two separate notices before a termination can be effectuated. The August 14, 2020 notice also failed to delineate between the sum that 958 owed for base rent and the sum that 958 owed for real estate taxes. Nor did it specify the time period for which 958 owed rent and real estate taxes. "[F]ail[ure] to delineate between the base rent and additional rent and/or to specify with particularity when the rent became due" constitutes a "substantive defect in a notice to cure" and "renders the entire notice deficient." *542 Holding Corp. v. Prince Fashions, Inc.*, 46 A.D.3d 309, 311, 848 N.Y.S.2d 37 (1st Dep't 2007). Because the August 14, 2021 notice failed to comply with Article 23.02 of the Overlease and was substantively deficient, the notice was invalid and could not effectuate a termination of the lease.

As for SCG's March 5, 2021 and March 14, 2021 notices, the Court concludes that these notices were invalid as well, and were therefore also insufficient to effectuate a termination of the lease. The March 5, 2021 notice stated that it served as "a backup to our attorney's default

8

letter sent on August 14, 2021 [sic] in the event a court finds that notice deficient." (ECF No. 37-4 at 2.)  By the terms of the notice itself, it would take effect only if a court found the August 14, 2020 notice deficient, which did not occur in the State Court Action in light of the stipulation.  Moreover, SCG's attempt to supplement its August 14, 2021 notice was improper.  Because a predicate notice is a condition precedent to a summary eviction proceeding, defects in the notice may not be remedied by amendment or supplementation after commencement of the proceeding.  *See Chinatown Apartments, Inc. v. Chu Cho Lam*, 51 N.Y.2d 786, 788 (1980).  And even setting aside these deficiencies, the March 5, 2021 and March 24, 2021 letters still failed to comply with the procedure required under Article 23.02 in light of the fact that the March 24, 2021 letter purported to terminate the lease immediately instead of after the requisite ten-day period.  Defendants' argument that a notice of termination automatically terminates the lease without regard for the procedures stated in Article 23.02 would render Article 23.02 meaningless.

Defendants also argue that courts cannot reinstate a lease after the lapse of time specified to cure a default, and that 958 was required to obtain a *Yellowstone* injunction while 958 litigated the validity of the notice of default, without which, Defendants argue, the lease would automatically terminate.  This misunderstands the law.  "*Yellowstone* relief is . . . merely a means of maintaining the status quo by tolling a contractual cure period during a pending action, permitting a tenant *who loses on the merits* of the lease dispute to cure the defect and retain the tenancy." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 354, 128 N.E.3d 128 (2019) (emphasis added) (citing *First Nat. Stores, Inc. v. Yellowstone Shopping Ctr., Inc.*, 21 N.Y.2d 630, 237 N.E.2d 868 (1968)).  Because 958 has prevailed on the merits of this issue and

the lease was never validly terminated, whether 958 had obtained a *Yellowstone* injunction is inapposite.

The Court concludes that as a matter of law, SCG's notices were invalid and therefore insufficient to effect a termination of the Overlease.

### C. Defendants' Counterclaim for Fraud in the Inducement in the Fifth Amendment to the Sublease

To establish fraudulent inducement under New York law, Defendants "must show by clear and convincing evidence that [958] knowingly or recklessly misrepresented a material fact, intending to induce [Defendants'] reliance, and that [Defendants] relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

Defendants argue that 958 made a misrepresentation of fact in the fifth amendment to the Sublease. Section 8(e) of the fifth amendment, which is titled, "Ratification" states:

> Tenant has not relied upon any representation of Landlord or its agents, other than any items contained in the Lease and modified by this Amendment as an inducement to enter into this Amendment. Except as expressly modified in this Amendment, all of the terms, covenants and conditions of the Lease shall remain in full force and effect and are hereby ratified and confirmed.

Section 16 of the Sublease, which is titled "Subordination and Attornment," contains a clause (16.03(b)) stating that 958 "represents and warrants . . . [that] the Overlease is valid, existing, in full force and effect, and there is no default thereunder beyond the expiration of all applicable grace and/or cure periods." Defendants argue that because Section 8(e) of the fifth amendment affirmed the terms, covenants, and conditions of the sublease, the fifth amendment extended the representation made in Section 16.03(b) through the date of the fifth amendment. Defendants argue that because 958 was aware that 958 had not been paying rent under the Overlease from April 1, 2020 onwards, Section 8(e) of the fifth amendment constituted a misrepresentation of

10

fact, which was a material inducement to NTS's entering into the fifth amendment instead of rejecting the Sublease. (ECF No. 53 at 14-15.)

958 responds that Section 16.03(b) of the Sublease makes a representation only through the date of the execution of the Sublease and the fifth amendment does not explicitly extend the date of that representation through the date of the fifth amendment. The Court agrees. The parties did not specify in the fifth amendment that they intended to extend the representation made in 16.03(b) through the date of the fifth amendment. Defendants also could have requested, but did not request, that SCG produce an estoppel certificate or letter of good standing to confirm that 958 was not in default of the Overlease. In any event, even if the parties had intended the fifth amendment to extend the representation of Section 16.03(b) through the date of the fifth amendment, 958 did not commit a misrepresentation of fact because 958 was not in default "beyond the expiration" of a "valid grace and/or cure period[]."

Defendants have also failed to allege the other elements necessary to establish a claim for fraud in the inducement. They have not submitted a sworn statement that Defendants relied on a misrepresentation and suffered damages as a result.

Accordingly, Defendants' fraud in the inducement claim is dismissed. For the same reasons, the Court concludes that 958 did not breach Section 16.03(b) of the Sublease.

D.   **Defendants' Remaining Defenses**

Defendants do not advance any arguments in opposition to 958's motion for summary judgment on Defendants' remaining affirmative defenses for: (1) failure to state a cause of action, (2) equitable estoppel, (3) unclean hands, and (4) failure of consideration. The Court addresses each of these affirmative defenses in turn.

First, 958 has clearly stated a cause of action for breach of the sublease and guaranty. Accordingly, the Court dismisses this defense.

11

Second, in order to invoke equitable estoppel, Defendants must establish that 958 exhibited: "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003) (citing *International Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 594 (2d Cir. 1996)).  Defendants do not offer any arguments or evidence going to 958's "false representation or concealment" aside from Defendants' arguments regarding fraud in the inducement in the fifth amendment to the sublease.  Therefore, for the reasons discussed above, this defense is also dismissed.

Third, defendants do not advance any additional arguments to support their defense invoking the doctrine of unclean hands aside from Defendants' arguments regarding fraud in the inducement in the fifth amendment to the sublease.  For the same reasons, Defendants' invocation of the doctrine of unclean hands is likewise dismissed.

Finally, the Court concludes that Defendants received substantial consideration as they operated their business from the Building until Defendants voluntarily vacated the premises.  As Defendants advance no arguments to the contrary, the defense for failure of consideration is dismissed.

## IV. Conclusion

For the foregoing reasons, Plaintiff 958's motion for summary judgment (ECF No. 35) is GRANTED with respect to its first, second, and fourth causes of action;[1] and Defendants' motion for partial summary judgment (ECF No.. 41) is DENIED with respect to their first, second, third, fourth, fifth, and sixth defenses.

---

[1] 958 has withdrawn its third cause of action.  (ECF No. 39 at 2 n.2.)

The parties are directed to file supplemental letter briefs with a proposed order within 21 days of the date of this opinion and order regarding the amount of damages, attorney's fees, and issues related to indemnification pursuant to the Sublease.

The Clerk of Court is directed to close the motions at Docket Numbers 35 and 41.

SO ORDERED.

Dated: September 29, 2023
      New York, New York

                                                             J. PAUL OETKEN
                                               United States District Judge